**In re POST–TRON SYSTEMS CORPORATION, Debtor.**

**Bankruptcy No. 89–10898.**

United States Bankruptcy Court, D. Rhode Island.

Oct. 13, 1989.

Edward J. Bertozzi, Jr., Edwards & Angell, Providence, R.I., for debtor.

Richard Mittleman, Amy Mower, Bruce Gladstone, Cameron & Mittleman, Providence, R.I., for Bank of New England.

Allan M. Shine, Winograd, Shine & Zacks, P.C., Providence, R.I., trustee.

Thomas S. Hemmendinger, Strauss, Factor, Hillman & Lopes, Providence, R.I., for IBM Credit Corporation.

### ORDER

ARTHUR N. VOTOLATO, Jr.
Bankruptcy Judge.

Heard on October 11, 1989, on the Trustee's Emergency Motion to Use Bank of New England's Cash Collateral for operations of debtor's business during the period October 8 through October 28, 1989. The Bank strenuously objects to any further use of its cash collateral.

Upon consideration of the evidence, the arguments of interested parties, and the authorities offered in support, we agree with the Trustee (and the debtor) that the three week period requested for the use of cash collateral is reasonable under the circumstances, and is not prejudicial to the Bank, on the facts before the Court at this time. We make this ruling based upon our finding that Patrick Kareiba, the Acting Chief Executive Officer and so-called "crisis manager" of the debtor appears to be

**346**

extremely well qualified and practical, with extensive experience in businesses of a similar nature as the debtor's, as well as with businesses also undergoing financial difficulties. In addition, we find that Mr. Kareiba's goals on behalf of the debtor are realistic,[1] and considering the short time that has passed since the Chapter 11 filing, September 28, 1989, it is understandable to the Court that the debtor does not yet have all of its substantive agreements in place. We find, in view of the very recent filing, that the amount of time being requested is most reasonable under the circumstances, and that the Trustee's motion for authority to operate for three weeks with the use of cash collateral is a conservative request. Additionally, the Court views the prejudice alleged by the Bank to be quite distorted, in that it fails to give any consideration to: (1) the agreements which the debtor is presently negotiating with its customers (notably IBM) and other creditors, and (2) the actual net exposure of the Bank, considering the uncontradicted testimony of Mr. Kareiba on this issue, as he responded on cross examination to the ongoing expense to the bank, even if the business were shut down immediately.

Finally, and of considerable importance to this ruling is our deep concern with the reality that to close the debtor's business now would leave all concerned with a practically worthless array of software, and no hope of recovery, except for whatever fractional amount the Bank might realize at auction. The Bank's incomprehensible desire to self-destruct at such an early date is not (yet) justification to bring down with it all other interested parties in the case.

Accordingly, the Trustee is authorized to use cash collateral for the period of October 8 through October 28, 1989, for the continued operation of debtor's business, but not to exceed $470,000.

---

1. Kareiba stated candidly that the debtor is not capable of reorganizing on a stand alone basis (which many similarly situated debtors do argue), but recognizes and stresses that the asset recovery will be maximized only by liquidating the debtor as a going business.